UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carleen W.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

Case No. 20-cv-1216 (SRN/LIB)

**REPORT AND RECOMMENDATION**

Plaintiff, Carleen W. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims under 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 20, 23], and the Court took the matter under advisement on the written submissions.

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **GRANTED**, and that Defendant's Motion for Summary Judgment, [Docket No. 23], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

**I. Procedural History**

On May 15, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr. 11, 373–74).[2] Plaintiff alleged that her disability began on May 31, 2014. (Tr. 11, 373–74). The Commissioner initially denied Plaintiff's present claims on September 14, 2018, and again, upon reconsideration, on January 11, 2019. (Tr. 11). On January 17, 2019, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 11, 313–14).

Administrative Law Judge Nicholas M. Ohanesian (hereinafter "ALJ") conducted an administrative hearing on November 6, 2019. (Tr. 11, 239–66). At said hearing, Plaintiff was represented by a non-attorney representative. (Tr. 239–66). During this hearing, the ALJ heard testimony from Plaintiff and an independent vocational expert, Cheryl Zilka (hereinafter "IVE Zilka"). (Tr. 11, 239–66). On December 3, 2019, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 9–21). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 20–21).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–7). Subsequently, on April 2, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Thus, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On May 20, 2020, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 20, 23], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 19], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 59 exhibits. (See, Administrative Record [Docket No. 19]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the

claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1–7). Thus, the ALJ's decision is the final decision of the Commissioner.

### C. Judicial Review

This Court's judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see, Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to

4

support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior relevant work because of a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review in the Present Case**

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2018. (Tr. 11). This finding is not in dispute.

5

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had "not engage in substantial gainful activity during the period from her alleged onset date of May 31, 2014 through her date last insured of December 31, 2018." (Tr. 13). This finding is not in dispute. The Court will refer to the period of time between May 31, 2014, and December 31, 2018, as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: osteoarthritis of multiple joints, degenerative disc disease, chronic pain syndrome, and obesity." (Tr. 13). Plaintiff does not challenge the finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14–15). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.02, 1.00B2b, 1.00B2c, or 1.04. (Tr. 14–15). Plaintiff does not challenge the ALJ's finding here at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could occasionally finger. She could never climb ladders, ropes, and scaffolds. Finally, she could have frequent exposure to extreme cold, extreme heat, wetness, hazardous moving machinery, and unprotected heights.

(Tr. 15). Plaintiff does challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also found that Plaintiff's "statements concerning the

6

intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 16). Plaintiff does not specifically challenge this credibility finding by the ALJ.

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Zilka, the ALJ found that Plaintiff was able to perform her past relevant work as a "Vice President, Financial Institution." (Tr. 20). Because Plaintiff believes that the RFC was incorrectly determined, she challenges the ALJ's finding that she could perform her past relevant work based on said RFC determination.

The ALJ's finding that Plaintiff could perform her past relevant work as a "Vice President, Financial Institution" is a sufficient, independent basis upon which an ALJ may conclude that a claimant is not disabled as defined by the Social Security Act. See, e.g., Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004). The ALJ therefore found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 20).[3]

## IV. Analysis

Plaintiff raises two overarching arguments on her appeal of the ALJ's decision: (1) the ALJ's RFC determination is not supported by substantial evidence because it fails to incorporate appropriate mental limitations and (2) the ALJ made "significant" legal errors in his evaluation of the medical evidence in the record. (Plf.'s Mem. [Docket No. 21] at 2–11). In support of her mental limitations related argument, Plaintiff contends that because the ALJ found, at step two of the sequential analysis, that Plaintiff had "mild limitations in understanding, remembering, and applying information," as well as, mild limitation in "concentrating, persisting, or maintaining

---

[3] Because the ALJ concluded that Plaintiff could perform her past relevant work and was therefore not under a disability, the ALJ declined to determine whether jobs existed in the national economy which Plaintiff could perform within the RFC determination.

pace" the ALJ should have included at least some mental health related limitations in the (step four) RFC determination and corresponding hypothetical question to the vocational expert. Plaintiff contends that if the ALJ would have properly included mental health related limitations in the RFC determination, then those limitations would have caused a substantially more limiting RFC determination such that it would have precluded her ability to perform her past relevant work. (Plf.'s Mem. [Docket No. 21] at 2–8).

In support of her contention that the ALJ's RFC determination and corresponding hypothetical question to the vocational expert should have included mental health related limitations, Plaintiff relies heavily on Newton v. Chater, 92 F.3d 688 (8th Cir. 1996). Plaintiff argues that Newton requires an ALJ to include mental health related limitations in the (step four) RFC determination and corresponding hypothetical question to the vocational expert if the ALJ found credible any mental health related limitations at step two of the sequential analysis. Plaintiff reads Newton too broadly.

In Newton, the ALJ presented to the vocational expert a hypothetical question that described a person with restrictions that included "a capacity for simple jobs." Newton, 92F.3d at 694. The claimant in Newton argued that the hypothetical question was insufficient "because it omitted medical evidence of his deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner." Id. In Newton, there was undisputed evidence of the claimant's mental health related limitations, and the ALJ had determined that the claimant "often" had deficiencies of "concentration, persistence, or pace." Id. at 690, 695.

The Newton Court held that the ALJ erred by failing to include the mental health related limitations in the hypothetical question to the vocational expert because the vocational expert's testimony was not based on "the full extent of [the claimant's] limitation." The Newton Court

concluded therefore that the vocational expert's "testimony could not have constituted substantial evidence to support the Commissioner's decision." Id. The Newton Court reasoned that the vocational expert's testimony may have been different if the mental health related limitations had been included in the hypothetical question. Id.

Newton only reaffirms the longstanding proposition that an ALJ must include in his RFC determination—and subsequent hypothetical question to the vocational expert based on that RFC determination—all limitation which the ALJ found credible. Id. Since the issuance of Newton, Courts in this District have repeatedly rejected the argument, as Plaintiff raises here, that Newton requires an ALJ to include in the (step four) RFC determination any limitation that the ALJ found during step two of the sequential analysis. See, e.g., Patricia M. v. Saul, No. 18-cv-3462 (DSD/HB), 2020 WL 3633218, at *3 (D. Minn. Feb. 5, 2020), report and recommendation adopted, 2020 WL 1951748 (D. Minn. Apr. 23, 2020); Michael R. v. Berryhill, No. 18-cv-241 (NEB/KMM), 2019 WL 5149978, at *8 (D. Minn. June 11, 2019), report and recommendation adopted, 2019 WL 4233852 (D. Minn. Sept. 6, 2019); Vicky R. v. Saul, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *12 (D. Minn. Jan. 28, 2021), report and recommendation adopted, 2021 WL 533685 (D. Minn. Feb. 12, 2021); see also, Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018). The restrictions identified in the step two's "paragraph B" discussions are used only to rate the severity of mental health related impairments at step two of the sequential evaluation process. Michael R., 2019 WL 5149978, at *8. "The mere fact that an individual has a medically determinable impairment does not necessarily mean that the impairment restricts the individual's ability to function in the workplace." Id.

In the present case, the ALJ, at step two of the sequential evaluation, determined that Plaintiff had "mild limitations" in "understanding, remembering or applying information," as

9

well as, "mild limitations" in the area of "concentrating, persisting or maintaining pace." (Tr. 14). The ALJ was not, as Plaintiff argues, necessarily <u>required</u> to include these limitations in his RFC determination or corresponding hypothetical question to the vocational expert.

This does not, however, end this Court's analysis. Although Plaintiff reads <u>Newton</u> too broadly, Plaintiff's argument raises other issues with the ALJ's RFC determination and resulting hypothetical question to the vocational expert.

"In posing hypothetical questions to a vocational expert, an ALJ must include all impairments [the ALJ] finds supported by the administrative record." <u>Gilbert v. Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999). The hypothetical question must "capture[] the concrete consequences of a claimant's deficiencies" to constitute substantial evidence. <u>Porch v. Chater</u>, 115 F.3d 567, 572 (8th Cir. 1997).

"The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work." <u>Gilbert</u>, 175 F.3d at 604. If an ALJ credits or relies upon the opinion of a vocational expert that was based on a faulty hypothetical question, the vocational expert's testimony that a claimant can perform her past relevant work cannot constitute substantial evidence. <u>See</u>, <u>Porch</u>, 115 F.3d at 572. In such a circumstance, remand is required.

In the present case, the ALJ asked the vocational expert the following hypothetical question:

> [A]ssume a person of the [c]laimant's age, education, and work experience, who . . . [has] less than a full range of sedentary work; with occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; . . . and limited to occasional fingering; with frequent exposure to extreme cold, extreme heat, wetness, and hazardous moving machinery, and unprotected heights.

(Tr. 253–54).[4] In response to this hypothetical question, the IVE Zilka testified that said hypothetical claimant would be able to perform Plaintiff's past relevant work. (Tr. 254–55).

In the present case, the portion of the ALJ's opinion discussing Plaintiff's RFC contained only a single paragraph regarding Plaintiff's mental health related limitations. (Tr. 18). That paragraph reads as follows:

> The State Agency Consultants found that claimant had a mild limitation in understanding, remembering, and applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. These statements are supported by a diagnosis of anxiety and mild depression with normal mental status examinations. Overall, these findings were consistent with medical evidence of record as a whole. The claimant testified she had memory problems, difficulty focusing, and would become physically sick due to stress. She alleged her memory problems began in 2014. She would forget underwriting guidelines and confuse client files. However, she continued to manage her family finances. She reported no issue attending to her personal hygiene due to her mental impairments. The medical evidence of record showed the claimant was diagnosed with mild depression, anxiety, and post-traumatic stress disorder. She reported feeling panicked, stressed, hypervigilant, irritable, fatigued, having flashbacks, and engaging in avoidant behavior. Examination found she had behavior that ranged from restless to normal, appeared anxious, had normal speech, good insight, and a euthymic affect.

(Tr. 18) (citation omitted). The portion of the ALJ's opinion discussing the RFC determination does not contain any other discussion of Plaintiff's mental health related limitations or the medical evidence of record related to Plaintiff's mental health impairments.

As an initial matter, the Court notes that an evaluation of the ALJ's RFC determination as it relates to Plaintiff's mental health related limitations is made difficult by the ALJ's failure to affirmatively assert whether he credits or discredits Plaintiff's alleged mental health limitations. For example, the ALJ noted that Plaintiff had been diagnosed with mild depression, anxiety, and post-traumatic stress disorder and the ALJ listed some of the symptoms reported by Plaintiff and

---

[4] The ALJ also asked a second hypothetical question, however, the ALJ's second hypothetical is not relevant to the present analysis because the ALJ did not rely on IVE Zilka's response to the second hypothetical question.

observed by various medical professionals; however, the ALJ failed to indicate whether or not he credited these reports and observations.

Nevertheless, it is evident from the portion of the ALJ's opinion discussing Plaintiff's RFC that the ALJ found at least some of Plaintiff's mental health related limitations to be supported by the record. After the ALJ noted that the State Agency Consultants found that Plaintiff had mild limitations in understanding, remembering, and applying information, as well as, mild limitations in concentrating, persisting, or maintaining pace, the ALJ noted that "[t]hese statements are supported by a diagnosis of anxiety and mild depression . . . ." (Tr. 18). The ALJ went on to note that "these findings were consistent with medical evidence of record as a whole." (Tr. 18).

From this discussion by the ALJ (the only RFC related discussion by the ALJ of Plaintiff's mental health related limitations), the only reasonable conclusion is that the ALJ found that the "medical evidence of record as a whole" supported "mild" limitations in Plaintiff's ability to perform certain mental health related functions. Thus, on the record now before the Court, the undersigned can only conclude from the ALJ's opinion that the ALJ found Plaintiff to have had at least some mental health related limitations which were supported by substantial evidence in the administrative record.[5] It is through this lens that the undersigned must review the ALJ's RFC determination and corresponding hypothetical question posed to the vocational expert.

---

[5] These is a substantive difference between the ALJ's finding of "mild" limitations in Plaintiff's mental health related abilities at step two of the sequential analysis and the ALJ's finding of evidence to support "mild" limitations in Plaintiff's mental health related abilities at step four of the sequential analysis. Although this distinction may seem semantic, it is the record with which this Court has been presented. The record now before the Court is clear: in the portion of the ALJ's opinion where he conducted his analysis of Plaintiff's RFC, the ALJ concluded that record supported finding at least some limitations in Plaintiff ability to perform mental health related functions.

As discussed above, "[i]n posing hypothetical questions to a vocational expert, an ALJ must include all impairments [the ALJ] finds supported by the administrative record." Gilbert, 175 F.3d at 604. If an ALJ credits or relies upon the opinion of a vocational expert that was based on a faulty hypothetical question, the vocational expert's testimony that a claimant can perform her past relevant work cannot constitute substantial evidence. See, Porch, 115 F.3d at 572. In such a circumstance, remand is required.

In the present case, the ALJ, during his RFC discussion, found that substantial evidence in the record as a whole supported "mild limitations" in Plaintiff's ability to perform certain mental health related functions. Without explanation, however, these mental health related restrictions were not accounted for in the ALJ's RFC determination.[6] Consequently, the ALJ's corresponding hypothetical question to IVE Zilka did not contain any restrictions related to Plaintiff's ability to perform these mental health related functions. The ALJ failed to provide any reasoning to explain this discrepancy. Thus, IVE Zilka's testimony cannot constitute substantial evidence to support the ALJ's decision.

The ALJ could have provided an explanation for why he declined to incorporate this "mild" mental health related limitations in the RFC and corresponding hypothetical question. See, Vicky R. v. Saul, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021), report and recommendation adopted, 2021 WL 533685 (D. Minn. Feb. 12, 2021). The ALJ here, however, failed to provide any explanation as to why his RFC determination and

---

[6] Defendant cites to cases where an ALJ's failure to include mental health related limitations in an RFC determination or corresponding hypothetical question was not reversible error. (Def.'s Mem. [Docket No. 24] at 6–7) (citing Flint v. Colvin, No. 13-cv-1220 (PAM/SER), 2014 WL 2818665, at *27 (D. Minn. June 23, 2014); Gann v. Colvin, 92 F. Supp. 3d 857, 868–69 (N.D. Iowa 2015); Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 20016)). Each of these cases is, however, easily distinguishable from the present case. In each of these cases, the ALJ provided an explanation as to why no mental health related limitations were included in the RFC determination and corresponding hypothetical question to the vocational expert. In the present case, the ALJ provided no such explanation.

corresponding hypothetical question omitted any mental health related limitations despite his finding that at least "mild" limitations were supported by the record.

It is important to note that the Court is not finding that the ALJ was required to include mental health related limitation in the RFC determination because the Court's review of the record finds that such limitations are supported by substantial evidence in the record. Rather, the Court finds, based on controlling Eighth Circuit precedent, that because the ALJ, in his RFC analysis, found that substantial evidence supported certain mental health related limitations, the ALJ was required to include said mental health related limitations in his RFC determination and the corresponding hypothetical question posed to the vocational expert.

Defendant argues that Plaintiff has failed to adequately demonstrate the need for "significant restrictions of functioning that would more than minimally, if at all, impact any work activities." (Def.'s Mem. [Docket No. 24] at 9). Defendant's argument here is, however, inapplicable to the Court's current finding. Remand is not appropriate in this case because Plaintiff has highlighted substantial evidence in the record supporting an RFC determination and hypothetical question containing mental health related limitations. Instead, remand is appropriate here because the ALJ found substantial evidence supported certain mental health limitations but—without explanation—failed to include any mental health limitations in the RFC determination or corresponding hypothetical question to the vocational expert.[7]

The ALJ's error is especially problematic in the present case because of the nature of Plaintiff's past relevant work. As the ALJ acknowledged and as the vocational expert testified, Plaintiff's past relevant work as a "Vice President, Financial Institution," is categorized as a

---

[7] It is hypothetically possible that the ALJ could have found "mild" mental health related limitations were supported by the record as a whole while also finding that mental health related RFC-limitations were unsupported by substantial evidence in the record or the ALJ could have hypothetically believed Plaintiff's ability to perform her past relevant work would not have been impeded by the "mild" limitations; however, the Court cannot make such assumptions. The ALJ's opinion lacks any indication that the ALJ made any such determination.

14

"skilled occupation." (Tr. 20). Moreover, the Dictionary of Occupational Titles, upon which the ALJ relied, provides that Plaintiff's past relevant work as a "Vice President, Financial Institution," requires a high level of reasoning[8] and math.[9] Even "mild" limitations on one's ability to understand, remember, and apply information or one's ability to concentrate, persist, and maintain pace could possibly preclude such work.

In summary, the Court finds that the ALJ's decision that Plaintiff could perform her past relevant work as a "Vice President, Financial Institution," is not supported by substantial evidence because, for the reasons discussed above, IVE Zilka's testimony cannot constitute substantial evidence to support the ALJ's decision, and the ALJ failed to provide any other basis to support said decision. Thus, remand is required.[10]

---

[8] The Dictionary of Occupation Titles here defines "reasoning" as follows: "Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables." 186.117-078 Vice President, Financial Institution, DICOT 186.117-078.

[9] The Dictionary of Occupation Titles here defines "math" as follows: "Level 5 – ALGEBRA: Work with exponents and logarithms, linear equations, quadratic equations, mathematical induction and binomial theorem, and permutations. CALCULUS: Apply concepts of analytic geometry, differentiations, and integration of algebraic functions with applications. STATISTICS: Apply mathematical operations to frequency distributions, reliability and validity of tests, normal curve, analysis of variance, correlation techniques, chi-square application and sampling theory, and factor analysis." 186.117-078 Vice President, Financial Institution, DICOT 186.117-078.

[10] Because the Court finds that remand is appropriate based on the consideration of this issue alone, the Court does not consider Plaintiff's other arguments in support of remand. The Court notes that a reconsideration of the issue discussed above will likely affect Plaintiff's other arguments.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 20], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 23], be **DENIED**; and

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated: January 30, 2022  
s/ Leo I. Brisbois  
Hon. Leo I. Brisbois  
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).